IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

TAMA PLASTIC INDUSTRY,

        Plaintiff,

vs.

PRITCHETT TWINE & NET WRAP, LLC,
JOSEPH JERALD PRITCHETT,

        Defendants.

8:12CV324

MEMORANDUM AND ORDER

This matter is before the court on the Defendants' motions to stay the litigation pending the reexamination of the patent at issue in this case, (Filings No. 69 and 216); Defendants' motion for a protective order, (Filing No. 211); and Plaintiffs' motion to compel, (Filing No. 218).

## BACKGROUND

Plaintiff Tama Plastic Industries ("Tama") is a business partnership registered in the State of Israel. A portion of Tama's business involves agricultural packaging and protective products referred to as crop packaging. One of Tama's primary agricultural products is a line of crop packaging products used to wrap hay, silage, and straw.

The United States Patent and Trademark Office ("PTO") issued Tama the '551 Patent on February 18, 2003. Claim 1 of the '551 Patent describes a knitted netting known as a modified shuss net wrap. The modified shuss net wrap has an advantage over conventional net wrap in that it reduces lateral shrinkage. That is, the net wrap covers an entire bale of crop, thereby protecting it more effectively from the elements.

In late 2008, the defendants began importing net wrap from China for resale in the United States. In the fall of 2010, Tama became aware that the defendants were importing and selling net wrap which, similar to Tama's net wrap product, reduced lateral shrinkage.

The defendants were also selling the net wrap for a lower price than Tama's net wrap product. Tama conducted tests on samples of the defendants' net wrap. Based on these tests, Tama concluded that the net wrap sold by the defendants was infringing on the '551 Patent.

Initial Court Proceedings

Tama filed suit against the defendants in the United States District Court for the Southern District of Indiana on June 9, 2011. The complaint states causes of action for patent infringement, trademark infringement, and unfair competition. On November 18, 2011, the defendants filed a motion to stay the proceedings pending the reexamination of the '551 Patent by the PTO. On November 30, 2011 the defendants moved to withdraw their motion to stay for the purposes of allowing discovery and planned settlement discussions. (Filing No. 33, ¶ 3 at CM/ECF p. 2). The court ordered the withdrawal of the motion to stay.

The parties filed a stipulated protective order (hereinafter referred to as "Protective Order I") on December 28, 2011. (Filing No. 42). Protective Order I addressed the procedure for the parties' designation of confidential information or documents. In addition, Protective Order I created an additional level of restriction by allowing the parties to designate documents or other information as "Attorneys' Eyes Only." Documents that contain "highly sensitive technical, scientific, research, financial, sales, customer, or other business information, the disclosure of which is highly likely to cause significant harm to an individual or to the business or competitive position of the designating party" could be designated as such. (Filing No. 42, ¶3 at CM/ECF p. 2).

On March 30, 2012 Tama filed for a preliminary injunction to prevent any further alleged infringement on the '551 Patent. (Filing No. 58). Defendants filed a Request for Ex Parte Reexamination of the '551 Patent on May 8, 2012.[1] Defendants' request for

---

[1] "Reexamination is, at bottom, a vehicle for the USPTO to consider substantial new questions of patentability concerning the claims of an existing patent— essentially, a limited 'do-over' of the original patent examination process before the USPTO. The existence of a

reexamination argues that a question of patentability exits with respect to the '551 patent due to obviousness. On May 9, 2012, the defendants filed a second motion to stay the litigation pending the outcome of the reexamination of the '551 Patent. (Filing No. 69).

On August 3, 2012, the Southern District of Indiana issued an order denying Tama's motion to preliminary injunction. (Filing No. 169). In so holding, the Hon. Jane Magnus-Stinson found that Tama failed to prove a likelihood of success on the merits or that it would suffer irreparable harm if the preliminary injunction was not granted. (Filing No. 169, at CM/ECF p. 19). The court further found that Pritchett would suffer great harm if it was prevented from selling its products and that Pritchett had the resources to compensate Tama if Tama was ultimately successful on its claims. Id.

On September 11, 2012, and after briefing by the parties, the United States District Court for the Southern District of Indiana transferred this case sua sponte to United States District Court for the District of Nebraska. (Filing No. 189). On November 5, 2012 the defendant resubmitted its motion to stay the proceedings, originally filed with the Southern District of Indiana, with this court seeking to stay the proceedings pending the PTO's re-examination of the '551 Patent.[2]

Discovery Proceedings

The parties have engaged in limited discovery with the exchange of interrogatories and requests for production of documents. The parties have also participated in a few depositions. Tama has requested certain information about the manufacture of Pritchett's net

---

'substantial new question'—one 'substantially different from those raised in the previous examination of the patent before the Office'—is the threshold requirement for triggering this process." J. Steven Baughman, Reexamining Reexaminations: A Fresh Look at the Ex Parte and Inter Partes Mechanisms for Reviewing Issued Patents, 89 J. Pat. & Trademark Off. Soc'y 349, 350 (2007).

[2] The parties briefed the motion to the Southern District of Indiana and were provided with an opportunity to further brief the matter after defendants resubmitted the motion with this court. Thus, in ruling on the motion to stay the court has considered the motions, briefs, and indexes of evidence filed with both courts. See Filings No. 69 & 216).

wrap products and information regarding Pritchett's customers. Pritchett has responded to these requests, but not to Tama's satisfaction. On October 12, 2012, the defendants filed a motion for a second protective order (hereinafter referred to as "Protective Order II"). The motion requests a "protective order regarding the Pritchett Defendants' sensitive customer information" and seeks to "prevent plaintiff Tama [] from obtaining [Pritchetts'] protected customer information through discovery or other means." Tama responded by filing a motion to compel (Filing No. 218) requesting a court order forcing the defendants to respond to certain discovery requests including those requests specifically seeking some of the defendants customer information.

## ANALYSIS

**A.  Motion to Stay**

> District courts have the "inherent power to manage their dockets and stay proceedings," including the authority to order a stay of litigation pending the reexamination of a patent by the PTO. Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426–27 (Fed.Cir.1988) (citations omitted); see also Proctor & Gamble Co. v. Kraft Foods Global, Inc., 549 F.3d 842, 848–49 (Fed.Cir.2008). Whether to stay litigation pending the conclusion of a reexamination is within the district court's discretion, even where the PTO has already granted the request for reexamination. See, e.g., Pay Child Support Online Inc. v. ACS State & Local Solutions, Inc., No. Civ.02–1321, 2004 WL 741465, at *4–5 (D.Minn. Apr. 5, 2004).

Polaris Indus., Inc. v. BRP US Inc., Case No. 12CV01405, 2012 WL 5331227 (D. Minn. Oct. 29, 2012).

In determining whether a stay is appropriate pending the reexamination of a patent, courts consider: 1) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; 2) whether a stay will simplify the issues in question and streamline the trial; and 3) whether a stay will reduce the burden of litigation on the parties and the court.

Centillion Data Sys., LLC v. Convergys Corp., Case No. 1:04CV0073, 2005 WL 2045786, at *1 (S.D. Ind. Aug. 24, 2005)(internal citations omitted).

In this case, both of the parties agree that any remaining activity regarding claim construction and the Markman hearing should be stayed until a definitive decision is rendered in the reexamination proceeding. However, the defendants are seeking to have the entire case stayed. Conversely, Tama seeks to have certain discovery commence to avoid "loss or destruction of information and evidence that is needed at trial for determining issues of patent infringement and damages." (Filing No. 231, at CM/ECF p. 9).

    1.    <u>Prejudice or Tactical Disadvantage to Tama</u>

Tama argues that any delay in further discovery, particularly a delay which may exceed two years, will result in the loss or destruction of certain types of evidence. For instance, Tama argues Pritchett has not fully responded to previously served discovery and has failed to identify all of the manufacturers of the net wrap product sold by Pritchett, has failed to identify its customers who purchased the allegedly infringing net wrap products, and has failed to provide information matching the origin of net wrap bales to specific customers. Tama also suggests that the net wrap product sold by Pritchett may require further testing to determine whether it infringes on the '551 Patent.

If all of the allegedly un-provided information was in the hands of Pritchett, the risk or prejudice to Tama would be minimal. During the course of the lawsuit, both parties are under a duty to preserve evidence. If, at the end of the stay, Tama discovers Pritchett has not fulfilled its obligation to preserve the requested information, Pritchett will be subject to sanctions including the possibility of adverse inferences or a default judgment. However, Tama asserts some of this information may be in the hands of third parties, including the Chinese manufacturers of Pritchett's net wrap product. If this is true, Tama will likely have a more difficult time gathering information after a two-year wait because the third parties may dispose of documents and because memories tend to fade over the course of time.

Accordingly, a granting of a complete stay of all discovery in this case will likely cause prejudice and tactical disadvantage to Tama with respect to information currently in the hands of third parties – specifically the foreign manufacturers of the net wrap.

    2.    <u>Simplification of the Case</u>

The issues of a patent lawsuit are often simplified through the patent reexamination process.[3]  While that may be ultimately true in this case, that factor is of limited value because Tama is not arguing that the claim construction proceedings and trial should go forward prior to the results of the reexamination hearing.  Rather, Tama seeks only limited discovery unrelated to the claim construction proceedings.  Thus, there is little risk that by permitting the limited discovery requested, the parties or the court will duplicate or perform unnecessary tasks related to the claim construction issues.   Accordingly, this factor is neutral as applied to this case.

    3.    <u>Burden on the Parties and the Court</u>

Pritchett argues a stay of this action will limit the burden on the parties and the court by saving both parties time and money and promoting judicial efficiency.  Tama counters that any discoverable information lost during the stay will increase its burden once the litigation recommences.

---

[3] According to defendants approximately 77 percent of all <u>ex parte</u> reexaminations result in some alteration of claims.  Filing No. 217, at CM/ECF p. 12.  Supporting its contention that the reexamination process may refine the issues ultimately before the court.  However, the "simplification" argument is less persuasive in cases, like this one, where the reexamination is <u>ex parte</u> and will not have a binding effect on Pritchett if the patent claims are confirmed.  That is, Pritchett may still litigate the same invalidity issues even if it receives an unfavorable result by the PTO.   <u>See</u>, e.g., Adaptor, Inc. v. Sealing Systems, Inc., Case No. 09CV1070, 2010 WL 4236875, *4 (E.D. Wis. Oct. 21, 2010)(discussing the difference between <u>ex parte</u> and <u>inter partes</u> examinations). <u>See</u> also J. Steven Baughman, Reexamining Reexaminations: A Fresh Look at the Ex Parte and Inter Partes Mechanisms for Reviewing Issued Patents, 89 J. Pat. & Trademark Off. Soc'y 349, 351-53 (2007) (describing the difference between the parties' involvement in <u>inter partes</u> reexaminations and <u>ex parte</u> reexaminations).

Allowing some of the limited discovery requested by Tama will only minimally burden Pritchett and this court. To the extent Pritchett has information in its possession that is responsive to Tama's previous discovery requests, such as the identity of its customers, it should be able to provide that information without unreasonable burden. Any third-party discovery will undoubtedly create some burden for the parties and the court.[4] However, any burden is outweighed by the potential harm to Tama if discoverable information held by third parties is lost.

Having considered all of the papers filed by the parties and applying the applicable law, the court finds that although a stay should be imposed pending the results of the reexamination process, the parties should be allowed to conduct third-party discovery as it relates to the manufacture and sale of the allegedly infringing net wrap products.

Two other points necessitate discussion. Tama accuses Pritchett of asserting ignorance in providing what Tama deems as incomplete discovery requests. If Pritchett asserts it does not have certain information and does not know, after reasonable investigation, if any third party possesses the requested information, no amount of additional discovery is likely to produce additional information. Tama may not like the answers, but unless it has some evidence that Pritchett either destroyed evidence or is intentionally withholding information, Tama's additional efforts to pry the desired information out of Pritchett will be pointless. Pritchett either has the information or it does not. If Pritchett represents that it does not, and it cannot obtain the requested information with a reasonable inquiry, Tama will have to accept those responses unless it has evidence that Pritchett is engaging in deceptive behavior.

---

[4] Tama has represented that it will not seek to contact any of Pritchett's customers unless it receives court authorization to do so. If Tama believes such contact is necessary and the parties cannot stipulate to the terms of contact, Tama shall file the appropriate motion with this court for a determination of whether the contact is necessary and, if so, under what circumstances it should occur.

Finally, Tama has asked for discovery related to Pritchett's continued ability to pay a damage award. In denying Tama's request for a preliminary injunction, the Hon. Jane Magnus-Stinson made a finding that Pitchett had sufficient assets to "compensate Tama for the lost profits it proposes." Filing No. 169, at CM/ECF at 17. Further, the primary asset relied upon by Pritchett in asserting it could satisfy an award is 1,000 acres of land in Nebraska. Tama argues it needs additional discovery to determine if this property is encumbered or of sufficient value to meet any obligations imposed on Pritchett. Much of the information Tama seeks regarding the property, such as how the property is titled and if it is already encumbered, is likely available in public records and further discovery at this time is unwarranted.

### B.  Motion to Compel/Motion for Protective Order

Tama seeks a court order compelling Pritchett to provide a full response to Interrogatory No. 10 and Requests for Production No. 10, 13 &14.

> Interrogatory No. 10 - Identify the purchasers of all bale netwrap products sold by the Pritchett Defendants.
>
> Request No. 10 - All documents whose identification is requested in Interrogatory No. 10, and all documents utilized or relied upon in preparing the Pritchett Defendants' response to this interrogatory.
>
> Request No. 13 - Produce two rolls of each product from each shipment of netwrap delivered to Pritchett by Pritchett's "current Chinese manufacturer," (as that terminology appears in Pritchett's second supplemental response to Tama's interrogatory no. 11) and produce all documents showing the identification by name and address of that supplier that relate to each shipment. To the extent Pritchett does not have any product in its possession from said shipments, produce all documents showing the distribution of products from such shipments including product names, model numbers, shipping address and delivery address.
>
> Request No. 14 - Produce two rolls of each product from each shipment of netwrap delivered to Pritchett, by Pritchett's prior suppliers and produce all documents showing the identification by name and address of that supplier and

relating to each shipment. To the extent Pritchett does not have any product in its possession from said shipments, produce all documents showing the distribution of products from such shipments including product names, model numbers, shipping address and delivery address.

The scope of permissible discovery is extremely broad and parties may obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense including the existence, description, nature, custody, condition, and location of any documents . . ." Fed. R. Civ. P. 26(b)(1). "A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action". Gladfelter v. Wal-Mart Stores, Inc, 162 F.R.D. 589, 590 (D. Neb. 1995). However, the scope of discovery is not unlimited. Some threshold showing of relevance must be made before parties are required to produce a variety of information which does not "reasonably bear upon the issues in the case." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992).

Once the requesting party meets the threshold relevance burden, "[a]ll discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing to bear that burden." Continental Ill. Nat'l Bank & Trust Co. Of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991). Further the party opposing the motion to compel must provide specific explanations or factual support as to how each request is improper. St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508, 511-12 (N.D. Iowa 2000).

A review of the discovery requests and the corresponding objections in this case reveals the parties consistently disagree on two issues: (1) the relevance of the requested information; and (2) the confidential nature of the requested information.

1.  Relevance

Tama seeks discovery of Pritchett's customer information in an effort to determine what impact Pritchett's allegedly infringing activity may have had on Tama's share of the net wrap market. If Tama must ultimately prove that its market share has been eroded by Pritchett's actions, Tama will undoubtedly need Pritchett's customer lists to determine which, if any, of Tama's former customers purchased the allegedly infringing products from Pritchett. In addition, if examples of Pritchett's net wrap are no longer available from Pritchett, it may be necessary for Tama to contact Pritchett's customers in order to locate samples of the allegedly infringing products. See, e.g., Peter Kiewit Sons', Inc. v. Wall Street Equity et al., Case No. 10CV365, 2011 WL 5075720 (D. Neb. Oct. 25, 2011)(finding third party customer or client information may be relevant particularly if the party no longer possesses the requested information).

Pritchett seems to have conceded that the customer information may be relevant in this litigation, but argues it has responded by providing information, with redacted names, of Pritchett clients that were previously Tama clients. Filing No. 211-1, at CM/ECF p. 4-5. Pritchett also states that if "a trial is imminent, then the Pritchett Defendants will comply with plaintiff's request for production regarding the customer information." Id. at CM/ECF p. 5. Neither of these arguments is particularly persuasive. First, it is unlikely Pritchett is aware of all of Tama's customers to whom it has sold net wrap. Tama's attorneys are in a much better position to examine a list of Pritchett's net wrap customers and compare them to a list of Tama's previous net wrap customers. Further, if Pritchett concedes the information may be relevant at trial, then it must be produced. Accordingly Pritchett's relevance objections are overruled.

2.  Confidentiality

Pritchett also objects to producing its customer lists based on confidentiality and asks for a protective order allowing it to withhold specific customer names. While customer lists

are undoubtedly confidential information, the parties already have a protective order in place to address the production of confidential information – including the ability of parties to designate documents as "Attorney's Eyes Only." Since the information is relevant, it is subject to production under the terms of the Protective Order currently in place.

Pritchett is "concerned about the undue and irreparable harm caused if [the customer lists] were to be inadvertently disclosed to those not covered under the stipulated protective order." Filing No. 211-1, at CM/ECF p. 3. A generalized fear of a mistake or inadvertent disclosure is not proper grounds on which production can be denied. Inadvertent disclosure is a concern in any litigation in which confidential information is exchanged. Should Tama's attorneys disclose information designated "Attorneys' Eyes Only", they will be in violation of a court order and subject themselves to possible sanctions. Accordingly, a new protective order is unnecessary and the defendants shall produce the responsive customer information.

IT IS ORDERED:

1) Defendants' motions to stay (Filings No. 69 & 216) are granted in part and denied in part. Further progression of this case is stayed except as to the following:

  a. To the extent they have not already done so, Defendants shall provide complete and full answers to Plaintiff's Interrogatory No. 10 and Requests for Production 10, 13 and 14 on or before February 8, 2013.

  b. The parties shall continue to supplement any previously served discovery to the extent new information becomes available.

  c. The parties shall be allowed to commence third party discovery to the extent it relates to the manufacture and sale of the allegedly infringing net wrap products in question.

2) Defendant's motion for a protective order, (Filing No. 211) is denied.

11

3) Plaintiff's motion to compel (Filing No. 218) is granted. To the extent Pritchett must produce names of its customers, that information shall be designated "Attorneys' Eyes Only" pursuant to the current Protective Order.

Dated this 24th day of January, 2013.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.